JAMES BRADFORD COMPANY, a corporation of the State of Delaware
*vs.* EDWARD HILL'S SON AND COMPANY, INC., a corporation of the
State of New York.

1. PRINCIPAL AND AGENT—LETTER INADMISSIBLE IN ACTION FOR COM-
   MISSION.

   In an action for commission by a company which acted as agent in the sale
   of caustic soda to a powder company, a letter from an agent of defendant seller
   to plaintiff was inadmissible to show that a condition of agency existed between
   the parties, and that the agent of the seller in the letter expressly recognized
   such agency; defendant seller not denying plaintiff was acting as agent for
   the seller's agent.

2. EVIDENCE—TESTIMONY AS TO WHETHER PLAINTIFF TREATED AS AGENT
   INADMISSIBLE AS CONCLUSION.

   In an action for commissions by a company which acted as broker in a
   sale of caustic soda to a powder company, testimony on direct examination of
   the chief clerk for the seller's agent, a witness for plaintiff, as to whether de-
   fendant seller treated plaintiff as its agent, *held* inadmissible as a conclusion
   of law.

3. PRINCIPAL AND AGENT—TESTIMONY IN SUIT FOR COMMISSION HELD IM-
   MATERIAL.

   In an action for commission by a company which acted as agent in a sale
   of caustic soda to a powder company, testimony of the chief clerk for the sel-
   ler's agent, as to whether the seller knew that plaintiff was selling caustic soda
   to the powder company which was furnished by the seller, *held* inadmissible
   on the ground it was immaterial whether defendant seller knew it or not.

4. PLEADING—TESTIMONY NOT WITHIN LIMITATIONS OF BILL OF PARTICU-
   LARS INADMISSIBLE.

   In an action for commission by a company which acted as broker in a
   sale of caustic soda to a powder company, testimony of the chief clerk for the
   seller's agent, as to whether defendant seller knew that plaintiff was acting
   in the sale of the chemicals furnished by the seller to the powder company in
   certain years, *held* inadmissible as not limited to the chemicals described in the
   bill of particulars.

5. WITNESSES—PARTY THERETO PROPER WITNESS TO PROVE TELEPHONE
   CONVERSATION.

   The proper witness to prove a telephone conversation is a party thereto
   who can testify to the whole of it, not a bystander who heard only one end of it.

6. PRINCIPAL AND AGENT—TESTIMONY AS TO WHETHER SELLER PAID COM-
   MISSIONS TO AGENT IMMATERIAL.

   In an action for commission by a company which acted as agent in sale
   of caustic soda to a powder company, testimony of a member of the seller
   firm as to whether they paid commissions to their agent for sales of caustic
   soda described in the bill of particulars, etc., *held* inadmissible as immaterial.

7. Principal and Agent—Evidence Insufficient to Warrant Finding of Contract Between Plaintiff and Defendant Seller.

In an action for commission by a company which acted as agent in sale of caustic soda to a powder company, evidence *held* insufficient to warrant the jury in finding any contract, either express or implied, existing between plaintiff and defendant seller whereby plaintiff would be entitled to recover verdict.

(*January* 28, 1920)

E. Ennalls Berl (of Ward, Gray and Neary) and James H. Hughes, Jr., (of Marvel, Marvel, Layton and Hughes) for plaintiff.

*Reuben Satterthwaite, Jr.,* for defendant.

Superior Court for New Castle County, January Term, 1920.

Foreign Attachment, No. 41, September Term, 1917.

Action by James Bradford Company against Edward Hill's Son and Company, Inc. Directed verdict for defendant, to which exception was taken, and writ of error sued out of Supreme Court.

For report of case in that court, *See infra, p.* 545.

The plaintiff's evidence was to the effect that the defendant was sole agent of the Michigan Alkali Company, producers of caustic soda and soda ash; that, commencing with the year 1911, the plaintiff would ascertain the requirements of the E. I. Du Pont de Nemours Powder Company for caustic soda and soda ash for each year and would communicate said requirements to Ellis Jackson and Company, the Philadelphia agent of the defendant; that prices would then be fixed, which plaintiff would submit to the Du Pont Company, and, if the order was secured, two contracts would be made, one between the plaintiff, representing the Michigan Alkali Company, and the Du Pont Company, and the other between the plaintiff and Ellis Jackson and Company, representing the defendant; that plaintiff would collect from the Du Pont Company the amount of each invoice, less one per cent. for cash in ten days from date of shipment, which the Du Pont Company, under the contract with plaintiff, was allowed to deduct; that plaintiff would deduct one per cent. commission as brokers, which the plaintiff, under the contract with Ellis Jackson and Company, Philadelphia agent of defendant, was allowed to deduct, and would send the balance to said Philadelphia agent; that this course of

dealing continued up to and including the requiremnts for the
year 1916; that, subsequently, when the Du Pont Company de-
sired additional caustic soda and soda ash for 1916, and also when
they desired to place an order for their regular requirements for
1917, the defendant, ignoring the plaintiff in the matter, made con-
tracts directly with the Du Pont Company; that plaintiff demand-
ed but never received commissions upon said sales, and received no
notice as to the termination of the relations between it and de-
fendant until April, 1917, after the demand for commission had
been made.

At the trial, counsel for plaintiff, for the purpose simply of
showing agency, was permitted to introduce into evidence the two
contracts for the 1915 requirements of the Du Pont Company,
the said contracts being as follows:

"Wilmington, Delaware, May 24th, 1915.

"Contract: Made in duplicate between James Bradford Company,
Wilmington, Delaware, representing the Michigan Alkali Company, herein-
after called the seller, and the E. I. Du Pont de Nemours Powder Company,
hereinafter called the buyer.

"Material: Caustic soda, 74 or 76% solid in drums, Michigan Alkali
Company's product.

"Quantity: Seven thousand (7000) to eight (8000) thousand tons of two
thousand (2000) pounds each, for shipment in carload lots over the calendar
year 1916 to the E. I. Du Pont de Nemours Powder Company, Hercules Pow-
der Company, and Atlas Powder Company. It being understood that we are
not bound to ship more than seven hundred (700) tons in any thirty (30) con-
secutive days. It is further understood that buyers will specify on or before
Jan. 1st, 1916, whether seven thousand (7000) tons or eight thousand (8000)
tons will be taken on account of this contract.

"Price: One dollar and fifty cents ($1.50) per hundred (100) pounds,
basis of 60%, actual weight, in drums, carload shipments, f. o. b. Wyandotte,
Michigan, freights equalized with Barberton, Ohio, Solvay, N. Y., and Salt-
ville, Va. Shipments west of the Rocky Mounts, via New York and the Canal
freights equalized with Syracuse, New York, only.

"Terms: Cash in ten (10) days from date of each shipment, less one per
cent (1%).

"Extensions: This contract is made subject to extension in case of fire,
flood, strikes, or any unavoidable accidents to the machinery or works of the
producers or sellers of this material, or from any interference by reason of
which the buyers or sellers are prevented from producing or receiving the goods;
otherwise, to be fulfilled in good faith, and in such event, the deliveries thus
suspended are to be made at the same rate after such disabilities have been
removed.

"Accepted: James Bradford Company, [by] W. M. Francis, Tr. E. I.
Du Pont de Nemours Powder Company, [by] J. B. Niles, P. A."

Statement.

"Philadelphia, Penna., May 24th, 1915.

DUPLICATE

"Contract: Made in duplicate between James Bradford Company, Wilmington, Delaware, hereinafter called the Buyers, and Ellis Jackson and Company, representing Edw. Hill's Son and Company, 64 Wall St., New York, hereinafter called the sellers.

"Material: Caustic soda, 74 or 76% solid in drums, Michigan Alkali Company's product.

"Quantity: Seven thousand (7000) to eight (8000) thousand tons of two thousand (2000) pounds each, for shipment in carload lots over the calendar year 1916 to the E. I. Du Pont de Nemours Powder Company, Hercules Powder Company, and Atlas Powder Company. It being understood that we are not bound to ship more than seven hundred (700) tons in any thirty (30) consecutive days. It is further understood that buyers will specify on or before Jan. 1st, 1916, whether seven thousand (7000) tons or eight thousand (8000) tons will be taken on account of this contract.

"Price: One dollar and fifty cents ($1.50) per hundred (100) pounds, basis of 60%, actual weight, in drums, carload shipments, f. o. b. Wyandotte, Michigan, freights equalized with Barberton, Ohio, Solvay, N. Y., and Saltville, Va. Shipments west of the Rocky Mounts, via New York and the Canal freights equalized with Syracuse, N. Y., only.

"Terms: Cash in ten (10) days from date of each shipment, less one per cent. (1%). It being understood all invoices will be discounted. Commission one per cent. (1%).

"Extension: This contract is made subject to extension in case of fire, flood, strike, or any unavoidable accidents to the machinery or works of the producers or sellers of this material, or from any interference by reason of which the buyers or sellers are prevented from producing or receiving goods; otherwise, to be fulfilled in good faith, and in such event, the deliveries thus suspended are to be made at the same rate after such disabilities have been removed.

"Accepted: James Bradford Company by————. Ellis Jackson & Company, by Ellis Jackson."

[1] Counsel for plaintiff offered in evidence a letter from Ellis Jackson and Company, Philadelphia agent of defendant, to the plaintiff, stating that it was offered to show that a condition of agency existed between the parties and, that Ellis Jackson and Company, in the letter, expressly recognized such an agency. Counsel for defendant objected, on the ground that defendant did not deny that plaintiff was acting as agent for Ellis Jackson and Company, but that the letter showed no connection with defendant.

HEISEL, J. We sustain the objection.

[2] One M., chief clerk for Ellis Jackson and Company, and a witness for plaintiff, was asked on direct examination the following question:

"Do you know whether Edward Hill's Son and Company, the defendant, treated the James Bradford Company, the plaintiff in this case, as its agent?"

Counsel for defendant objected, on the ground that the question called for a conclusion of law.

HEISEL, J. We sustain the objection.

[3] The same witness was asked on direct examination the following question:

"Do you know whether Edward Hill's Son and Company knew that the James Bradford Company was selling soda ash and caustic soda to the Du Pont Company, which was furnished by Edward Hill's Son and Company?"

Objected to by counsel for defendant, on the ground that it was immaterial whether defendant knew it or not.

Counsel for plaintiff stated that they were trying to show that defendant company knew of the plaintiff company and treated it as its subagent in making the sales to the Du Pont Company.

HEISEL, J. We sustain the objection.

[4] The same witness was asked on direct examination the following question:

"Do you know whether the defendant knew that the plaintiff was acting in the sale of the chemicals furnished by defendant to the Du Pont Company, in the years 1915 and 1916?"

Objected to by counsel for defendant, on the ground that the question was not limited to the chemicals described on the bill of particulars, that is, the chemicals sold to the Du Pont Company under the supplementary contract for 1916 and the regular contract for 1917, and for which the plaintiff claimed commissions.

HEISEL, J. We sustain the objection.

[5] The same witness was asked on direct examination the following question:

"Did you hear a telephone conversation, in 1915 or 1916, between Mr. Ellis Jackson, of Ellis, Jackson and Company, in Philadelphia, and Mr. Taylor of Edward Hill's Son and Company, in New York, which had reference to the position of the plaintiff in effecting sales of caustic soda and soda ash to the Du Pont Company, and if so, what did you hear of this conversation?"

Mr. Satterthwaite: Is the witness going to testify to what Mr. Jackson said or what Mr. Taylor said?

By Judge Heisel: Q.   Did you hear what Mr. Taylor said?
A.   No, sir.

Mr. Berl: The witness can testify to the end of the conversation he did hear.

HEISEL, J.   We think this is the wrong witness to prove the conversation; the proper witness would be Mr. Jackson.

[6]   One T., a member of the firm of Edward Hill's Son and Company, the defendant, was called as a witness for the plaintiff and was asked in direct examination the following question:

"Did you pay commissions to Ellis Jackson and Company for these sales of the caustic soda and soda ash, described in the bill of particulars in this case, that is, the chemicals sold to the Du Pont Company under the supplementary contract of 1916 and the regular contract for 1917, for which the plaintiff claims commissions?"

Objected to by counsel for defendant as immaterial.

HEISEL, J.   We sustain the objection.

When the plaintiff rested its case, counsel for defendant moved for a non-suit, for the following reasons:

1.   There is absolutely no testimony in this case that the plaintiff was acting in any way as the agent for the defendant company; there is no testimony that Ellis Jackson and Company had any authority to employ any other agent or broker who had authority to bind the defendant company; there is absolutely no testimony whether the James Bradford Company had any contract with Edward Hill's Son and Company which would entitle them to any commission from Edward Hill's Son and Company on any sales; there is no testimony that if they ever were entitled to any commission, there was any continuing contract, and there was no reason why they should not be cut out as agent or broker at any time; there is no testimony that Edward Hill's Son and Company ever did pay to the James Bradford Company any commission. The contracts in evidence are absolute sales from Ellis Jackson and Company to the James Bradford Company, and from the Bradford Company to the E. I. Du Pont de Nemours Powder Company, and the testimony is that the Du Pont Company was

liable to the James Bradford Company for the purchase price of those goods. Second, Mr. Francis testified that on the sales made direct by Edward Hill's Son and Company to the Du Pont Company, he looked to Ellis Jackson and Company for his commission and compensation, and there is the testimony of Mr. Moran, of Ellis Jackson and Company, that the James Bradford Company was their agent and authorized to sell goods on commission for their account, and the testimony of Mr. Taylor is that he made the sale direct, for Edward Hill's Son and Company, to the Du Pont Company.

The contention of counsel for plaintiff was as follows:

As to the want of privity or direct right between the plaintiff and defendant in this case, the plaintiff offers the fact that there are two contracts in evidence, one between the James Bradford Company, agent of the Michigan Alkali Company, hereinafter called the seller, and the E. I. Du Pont de Nemours Powder Company, hereinafter called the buyer. Mr. Taylor testified that Edward Hill's Son and Company, the defendant in this case, is the sole selling agent of the Michigan Alkali Company, so that when a contract is made in the name of the Michigan Alkali Company, by the James Bradford Company, the necessary inference is that it represented Edward Hill's Son and Company. It further appears from the evidence that under the contract which was shown, and contracts similar to it, deliveries were made by Edward Hill's Son and Company, to the James Bradford Company who deducted one per cent. commission and forwarded the balance to Ellis Jackson and Company in Philadelphia. There is also testimony that when these sales were in the air, Mr. Taylor, Mr. Jackson and Mr. Francis negotiated with the purchasing agent of the Du Pont Company, together; that on one occasion, when they had failed to make the sale, Mr. Taylor and Mr. Jackson left the place, and Mr. Francis came back and saw the purchasing agent again, and finally succeeded in arriving at a price which carried the sale. The rule of agency depends, not upon any particular contract, but upon dealings between the parties and the facts of the case, taken together. Mr. Francis testified that, at the time the James Brad-

ford Company, representing the Michigan Alkali Company, executed the contract with the Du Pont Company, he executed a similar contract with Ellis Jackson and Company, representing Edward Hill's Son and Company, and that this contract was in exactly the same terms as the Du Pont contract. The bodies of the two contracts, with one single exception, are identical. That one exception was a provision for one per cent. commission; in other words, the fifth clause of the contract with Ellis Jackson and Company, representing Edward Hill's Son and Company, provided that the James Bradford Company was to receive a commission of one per cent., and that is entirely inconsistent with the relation of buyer and seller. It is submitted that, in the face of the fact that Edward Hill's Son and Company continued to deliver under the old relation, and when a time came when they made a contract direct, they tried to shake off their agent, the procuring cause of the sale. This motion should therefore not be granted. *Tebo v. Mitchell*, 5 *Pennewill*, 356, 63 *Atl.* 327; *Tebo v. Weld*, 5 *Boyce*, 255, 92 *Atl.* 876; *Geylin v. DeVilleroi*, 2 *Houst.* 311, 316; *Hornbeck v. Gilmer*, 110 *La.* 500, 34 *South.* 651.

HEISEL, J. [7] We have given this case such consideration as we could, in the short time we have had, and while the court is always reluctant to grant a non-suit, nevertheless, when we feel satisfied there is not sufficient evidence to warrant the jury in finding a verdict in favor of the plaintiff, it is our duty to grant a motion for a non-suit. In this case there is not sufficient evidence to warrant the jury in finding any contract, express or implied, existing between the plaintiff and the defendant, whereby the plaintiff would be entitled to recover a verdict in this case. We are, therefore, constrained to direct that a non-suit be entered.

Mr. Hughes: We decline to accept a non-suit.

HEISEL, J. For the reasons just stated, in granting the motion for a non-suit, you are instructed, gentlemen of the jury, to return a verdict for the defendant.

Verdict for defendant.